# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# LONDON DIVISION

| | |
|---|---|
| COREY DeANGELIS, | Case No. 6:25-CV-004-CHB |
| *Plaintiff*, | |
| v. | **COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF** |
| PULASKI COUNTY BOARD OF EDUCATION, CINDY PRICE in her official and personal capacities as Chairperson of the Pulaski County Board of Education, REBEKAH BRANSCUM, in her official and personal capacities as Vice-Chair of the Pulaski County Board of Education, LAURA CARRIGAN, in her official and persona capacities as a member of the Pulaski County Board of Education, PATTY EDWARDS, in her official and personal capacities as a member of the Pulaski County Board of Education, DAPHNE TUCKER, in her official and personal capacities as a member of the Pulaski County Board of Education, PATRICK RICHARDSON in his official and personal capacities as Superintendent of Pulaski County School District, and DEFENDANT DOE in their official capacity as the employee-administrator responsible for maintaining the Facebook Account of Pulaski County School District, | |
| *Defendants*. | |

1

# INTRODUCTION

1. This is a case to vindicate the First Amendment rights of Corey DeAngelis, a nationally recognized advocate for educational opportunity, who was censored and otherwise restricted in his online speech when he criticized the Pulaski County School District's illegal use of taxpayer resources to advocate against a recent ballot measure.

2. Plaintiff seeks nominal damages and a permanent injunction prohibiting the District from illegally using its social media platforms to restrict speech on the basis of viewpoint.

# PARTIES

3. Plaintiff Corey DeAngelis is a Texas resident and a nationally recognized advocate for school choice and education reform.

4. Defendant Pulaski County Board of Education is the governing body for the Pulaski County public school district under the law of the state of Kentucky, K.R.S. Chapter 158.

5. Defendant Cindy Price is the Chairperson of the Pulaski County Board of Education.

6. Defendant Rebekah Branscum is the Vice-Chair of the Pulaski County Board of Education.

7. Defendant Laura Carrigan is a member of the Pulaski County Board of Education.

8. Defendant Patty Edwards is a member of the Pulaski County Board of Education.

9. Defendant Daphne Tucker is a member of the Pulaski County Board of Education.

10. Defendant Patrick Richardson is the Superintendent of the Pulaski County School District.

11. Defendant Doe is the employee responsible for acting as administrator of the Pulaski County School District's Facebook page.[1]

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this case raises federal claims arising under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

13. Plaintiff brings his claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, *Ex parte Young*, 209 U.S. 123 (1908), and the general legal and equitable powers of this Court. Plaintiff also seeks nominal monetary damages as relief.

14. Venue is proper in this Court because Defendants are located in the Eastern District of Kentucky, London Division, 28 U.S.C. § 1391(b)(1), and a substantial part of the events giving rise to Plaintiff's claims occurred in this district, 28 U.S.C. § 1391(b)(2).

---

[1] Plaintiffs intend to amend their complaint once the individual is identified in discovery.

## FACTUAL ALLEGATIONS

15. Beginning on July 14, 2010, the District operated an official Facebook page where members of the public could comment on posts.

16. Around early August 2024, the District posted messages advocating against Amendment 2—a ballot initiative that would allow the state to provide financial support for education outside the public school system. These messages were posted on its social media pages, website and electronic bulletin boards. The posts contained statements such as: "No on Amendment 2. Public Funds for public schools." One such post is reproduced below:



17. The District's posts on Amendment 2 were contrary to Kentucky School Boards Association guidance that "a district may not expend funds to promote a certain viewpoint on a political issue."[2]

---

[2] *See* Kentucky School Boards Association, Public Discussion of Amendment 2: Frequently Asked Questions, July 2024, https://filecabinet7.eschoolview.com/1365B58C-F95F-4E75-94BB-A29D9A94F1C7/20af30d5-b8c4-4a1c-a21e-48979ae72187.pdf

18. The District's posts on Amendment 2 were contrary to longstanding guidance from the Attorney General, establishing that "even the 'nominal' expenditure of resources and time' to promote a constitutional amendment improperly used taxpayers' dollars and wrongfully violated 'the legislative intent to divorce politics from the public schools.'"[3]

19. This guidance was based on Kentucky Revised Statute § 65.013, a law enacted in 2021 mandating that "local, state and federal tax dollars shall not be used to advocate, in partial terms, for or against any public question that appears on the ballot." Kentucky Revised Statute § 48.025 contains identical language.

20. In his role as an advocate for educational opportunity, and as a supporter of the Amendment 2 ballot measure, Mr. DeAngelis brought attention to the Defendants' illegal actions through an August 11 post on the X social media platform, where his account has more than 191,000 followers. That post has since been viewed more than 763,000 times.

21. That same day, Mr. DeAngelis also commented on the District's Facebook page, pointing out that the District had violated Kentucky law by using public resources to advocate against Amendment 2.

---

[3] Attorney General Advisory, Commonwealth of Kentucky Office of the Attorney General, (Aug. 13, 2024), https://www.ag.ky.gov/Press%20Release%20Attachments/08.13.2024%20Amend%202%20Advisory.pdf (quoting OAG 74-118).

22. On August 13, 2024, Kentucky Attorney General Russell Coleman confirmed Mr. DeAngelis's reading of the law, issuing an advisory explaining that such posts violate Kentucky law.[4]

23. On August 14, 2024, undersigned counsel at the Liberty Justice Center sent a letter to the District detailing how the District's advocacy actions were illegal and demanding removal of the posts.[5]

24. That same day, the District removed the illegal social media posts, and also closed comments on their new Facebook post announcing the removal of the illegal posts after more than 90 comments—predominantly negative—had been posted. A screenshot taken that day shows that users had the ability to "react" to posts, but not post new comments:



25. On or around August 16, 2024, the District blocked Mr. DeAngelis on Facebook—preventing him from viewing or commenting on the District's Facebook

---

[4] Attorney General Advisory, Commonwealth of Kentucky Office of the Attorney General, (Aug. 13, 2024), https://www.ag.ky.gov/Press%20Release%20Attachments/08.13.2024%20Amend%202%20Advisory.pdf

[5] https://libertyjusticecenter.org/wp-content/uploads/LJC-Demand-Letter-Pulaski-School-District.pdf

page or posts—and his prior comments no longer appeared. When Mr. DeAngelis tried to access the District's Facebook page, he received this notice:

> ← Content not found
>
> The page you requested cannot be displayed right now. It may be temporarily unavailable, the link you clicked on may be broken or expired, or you may not have permission to view this page.
>
> Back to home

26. Mr. DeAngelis remained blocked by the District, with his comments invisible, until on or around August 21, 2024.

27. On August 26, 2024, the undersigned counsel sent a letter to the District requesting that the District agree to 1) refrain from interfering with Mr. DeAngelis's criticism of the District on social media, 2) reopen public comment, and 3) cease any further efforts to suppress free expression.

28. Mr. DeAngelis's undersigned counsel then exchanged emails with the District's counsel, asking for a written commitment to not block Mr. DeAngelis or otherwise engage in viewpoint-based restrictions on social media to avoid litigation over this matter. Neither Mr. DeAngelis nor his counsel ever received that commitment.

### CLAIMS FOR RELIEF

### COUNT ONE
### 42 U.S.C. § 1983 – First Amendment Violation

**The District violated Mr. DeAngelis's First Amendment rights when it blocked him from its social media pages and deleted his comments.**

29. Plaintiff incorporates the preceding paragraphs by reference.

30. The First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." U. S. Const. amend. I.

31. The Supreme Court has made clear that a government official can be held liable under 42 U.S.C. § 1983 for violating the First Amendment—which applies to state and local governments through the Fourteenth Amendment—when the official blocks an individual from the official's social media page or deletes an individual's comments from the page. *Lindke v. Freed*, 144 S.Ct. 756, 765 (2024) (recognizing, among other things, that "public schools" engage in state action when they operate social media pages).

32. This is because official social media pages and their comment sections are "public forums" for purposes of the First Amendment. *People for the Ethical Treatment of Animals v. Tabak*, 109 F.4th 627, 634 (D.C. Cir. 2024) (citing *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1178–79 (9th Cir. 2022), *vacated and remanded on other grounds*, 144 S.Ct. 717 (2024); *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019); *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019), *judgment vacated on other grounds*, 141 S. Ct. 1220 (2021)).

33. The First Amendment prohibits State actors from engaging in viewpoint discrimination in public forums, and "[v]iewpoint discrimination is apparent . . . if a government official's decision to take a challenged action was impermissibly motivated by a desire to suppress a particular point of view." *Davison*, 912 F.3d at 687 (quotation omitted).

34. By attempting to suppress any suggestion that it might be violating Kentucky law by using its official page to campaign against Amendment 2, the District engaged in unlawful viewpoint discrimination.

35. Speech discussing political and legislative issues and the actions of public entities is at the core of the First Amendment's protection. Indeed, the First Amendment reflects the view that "the law should encourage the private individual to become involved in and express his or her views on the conduct of government affairs." *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985).

36. The District's advocacy against a ballot initiative was precisely such a matter of public concern; Mr. DeAngelis's speech was of political importance, decrying the illegal actions of a public entity in advocating against a pending ballot initiative.

37. The District blocked Mr. DeAngelis and deleted his comments because it disliked his viewpoint and wanted to prevent other community members from hearing it. Such behavior deprives Mr. DeAngelis of his clearly established First Amendment right to free speech.

38. Because the District deprived Mr. DeAngelis of his First Amendment right to free speech, Mr. DeAngelis is entitled to a permanent injunction ordering the District to refrain from suppressing his First Amendment rights.

39. Mr. DeAngelis is further entitled to a declaratory judgment declaring that Defendants violated his First Amendment free speech rights by blocking Mr. DeAngelis from the District's official Facebook page.

40. Mr. DeAngelis is also entitled to monetary damages against Defendants for their deprivation of his First Amendment free speech rights.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

A. Enter a permanent injunction ordering the District, its agents, employees, officers and all other persons in active concert or participation with it to refrain from blocking Mr. DeAngelis or other members of the public from interacting with the District's official Facebook page based on viewpoint;

B. Enter a declaratory judgment declaring that the District violated Mr. DeAngelis's First Amendment right to freedom of speech when it blocked him from making comments on its Facebook page;

C. Award Mr. DeAngelis nominal damages for Defendants' violations of his constitutional rights;

D. Award Mr. DeAngelis his attorney's fees and costs as a prevailing party under 42 U.S.C. § 1988; and

E. Grant Mr. DeAngelis all further relief that the Court deems just, proper, or equitable.

Dated: January 15, 2025

Respectfully submitted,

**MEGERLE LAW**

 /s/ Steven J. Megerle
Steven J. Megerle, Esq., Ky. Bar Reg. No. 90675
Megerle Law
P.O. Box 2613
Covington, KY 41012
(859) 982-2025 – telephone
(859) 972-0555-facsimile
(859) 992-5403 (cellular)
sjm4880@aol.com

Dean McGee*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400 - telephone
dmcgee@libertyjusticecenter.com

*Pro hac vice admission forthcoming*

*Attorneys for Plaintiff Corey DeAngelis*