UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| COREY DeANGELIS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 6:25-CV-004-CHB-HAI |
| | ) |
| v. | ) |
| | ) **CONSENT DECREE AND ORDER** |
| PULASKI COUNTY BOARD OF | ) |
| EDUCATION, et al., | ) |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Upon consideration of the Motion for Entry of Consent Decree and Order filed by the parties, it is hereby **ORDERED**, **ADJUDGED AND DECREED** as follows:

**BACKGROUND**

1. Corey DeAngelis brought this suit against Board of Education of Pulaski County, Kentucky, its members in their official and personal capacities, its Superintendent Patrick Richardson in his official and personal capacities, and the unidentified employee responsible for maintaining the Facebook Account of Pulaski County School District. The claims against the Board members in their personal capacities have been dismissed with prejudice by separate stipulation of dismissal. In this suit, Mr. DeAngelis has alleged that the Defendants violated his First Amendment rights by censoring and otherwise restricting in his online speech after he criticized the Pulaski County School District's advocacy against Amendment 2, a ballot measure that would have permitted the Commonwealth of Kentucky to expand access to school choice programs throughout the state.

2. The parties recognize, and the Court finds, that this Consent Decree and Order (the

"Decree") has been negotiated in good faith; settlement will avoid continued litigation between the parties; settlement of this matter is in the public interest; and entry of this Decree is fair and reasonable.

## JURISDICTION

3. This Court has jurisdiction over the parties and subject matter of this Decree pursuant to 28 U.S.C. § 1331.

## APPLICABILITY

4. The provisions of this Decree shall apply to and be binding upon the parties; any successor to Chairperson, Vice-Chair or members of the Board of Education of Pulaski County, Kentucky; any successor to Patrick Richardson as Superintendent of Pulaski County School District; and all current and successor Pulaski County School District personnel.

5. The District admits and recognizes that it blocked Mr. DeAngelis from its social media pages, and otherwise deleted and/or restricted his comments and the comments of others wishing to address the District's advocacy on Amendment 2— advocacy that was ultimately opined by Kentucky's Attorney General to have violated state law without any communication with the Pulaski County School District.[1]

6. The District commits to not block or otherwise restrict Mr. DeAngelis from interacting with its social media pages in the future except to the extent the District deems it necessary to preemptively disable all comments on a specific post, in which case the District recognizes that it must have an independent, content-neutral justification for doing so. Such action may not be taken for the purpose of suppressing criticism of the District or its policies or public positions.

---

[1] Attorney General Advisory, Commonwealth of Kentucky Office of the Attorney General, (Aug. 13, 2024), https://www.ag.ky.gov/Press%20Release%20Attachments/08.13.2024%20Amend%202%20Advisory.pdf.

7. The District commits to not delete Mr. DeAngelis's comments from its social media pages in the future except to the extent the District deems it necessary to delete all comments on a specific post, in which case the District recognizes that it must have an independent, content-neutral justification for doing so. Such action may not be taken for the purpose of suppressing criticism of the District or its policies or public positions.

8. The District commits not to otherwise engage in viewpoint-based restrictions on social media against Mr. DeAngelis or other individuals. However, the District may report any user and/or temporarily restrict any user's access to the District's social media platforms for violating the Rules set forth in this Paragraph below, and may report any user or user's comments to a social media platform if the District believes in good faith the comments may violate the social media platform's terms of service or rules, and may hide or otherwise block the reported comments from the District's social media platforms during the time of such a report. Further, social media platforms may have automated mechanisms that hide or otherwise block comments which are beyond the control of the District. In addition to restricting any user's access in accord with this Paragraph, the District may hide or delete comments, as applicable to the respective platform, if they contain, constitute, or link to any of the following, which collectively shall be "Prohibited Content":

    a. Malicious or harmful software;
    b. Advertisements, promotions, or solicitations of a commercial product or service;
    c. Confidential, personally identifying, or private information, including but not limited to dissemination of personally identifying information under KRS 525.085;
    d. Material that, taken as a whole: appeals to the prurient interest in sex; describes or portrays sexual conduct in a patently offensive way; or contains explicit sexual content that does not have serious literary, artistic, political, or scientific value;
    e. Threatening statements within the meaning of KRS 508.075 to 508.080; harassment within the meaning of KRS 525.070(1)(c) or (e); or harassing communications within the meaning of KRS 525.080(1)(a); and/or
    f. SPAM, consisting of disruptive and repetitive unsolicited messages sent indiscriminately on the Internet to a large number of recipients or posted in a large

number of places.

9. The District recognizes that the Supreme Court has made clear that government entities and government officials can be held liable under 42 U.S.C. § 1983 for violating the First Amendment—which applies to state and local governments through the Fourteenth Amendment—when the official blocks an individual from the official's social media page, deletes an individual's comments from the page, or otherwise engages in content or viewpoint discrimination in connection with the maintenance of its social media pages. *See, e.g.*, *Lindke v. Freed*, 144 S.Ct. 756, 765 (2024) (recognizing, among other things, that "public schools" engage in state action when they operate social media pages).

10. The District recognizes that official social media pages and their comment sections are "public forums" for purposes of the First Amendment unless all comments are disabled.

11. The District recognizes that by attempting to suppress any suggestion that it might be violating Kentucky law by using its official page to campaign against Amendment 2, the District would be engaging in unlawful viewpoint discrimination.

12. The District shall distribute this Decree to its staff in charge of communications, members of the Board of Education, Superintendent, and communications staff at the board or school level. Communications staff will receive remedial Open Records, Open Meetings, and reasonable First Amendment educational training regarding their obligations under the First Amendment and provide confirmation of said training to the Plaintiff's counsel or representatives within 12 months of this Decree.

**ENFORCEMENT**

13. The Court shall retain jurisdiction of this case in order to enforce the terms and conditions of the Decree, to modify or terminate the Decree for good cause shown, and to resolve

any disputes arising hereunder.

## COSTS OF LITIGATION

14. Mr. DeAngelis shall be awarded his costs of litigation in this action, including reasonable attorney fees ("Costs of Litigation") in the amount of $30,000.00, pursuant to 42 U.S.C. § 1988.

## GENERAL PROVISIONS

15. This Decree constitutes a settlement by the parties of disputed claims as alleged in the Complaint. Plaintiff agrees that this fully resolves all claims which exist or may exist, and that he agrees he has no other claim to bring against any Defendant in any forum.

16. The effective date of this Decree shall be the date of its entry. If for any reason the Court does not enter this Decree, the obligations set forth in this Decree are null and void.

17. The Decree can be executed in counterparts.

18. Nothing in this Decree shall prevent Pulaski County Board of Education from taking additional measures to protect the First Amendment rights of its constituents and any others who interact with it in any public forum.

19. Nothing in this Decree shall prevent the Pulaski County Board of Education from asserting any and all defenses available should this decree be modified or terminated. By entering into this decree the Defendants admit no fault or liability, however recognize that a mistake may have been made with no intent to deprive anyone of their First Amendment Rights.

20. All correspondence concerning this Decree and all documents that are submitted pursuant to this Decree shall be addressed as follows:

As to Plaintiff Corey DeAngelis:

LIBERTY JUSTICE CENTER

7500 Rialto Blvd.
Suite 2-250
Austin, TX 78735
(512) 481-4400
dmcgee@ljc.org

As to Defendants:

PULASKI COUNTY BOARD OF EDUCATION
Attn: Superintendent 925 N Main St,
Somerset, KY 42503

**CONSENT TO ENTRY OF DECREE**

21. Each of the parties consents to entry of this Decree, subject to the Court's approval of this Decree. The undersigned certify that they are fully authorized by the party to enter into the terms and conditions of this Decree and to execute and legally bind the represented parties to it.

This the 2nd day of July, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY